UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

VILMA G.,

        Plaintiff,

                                   **Case No. 2:21-cv-1402**

    v.                               **Magistrate Judge Norah McCann King**

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

        Defendant.

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Vilma G. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On May 29, 2019, Plaintiff filed her application for benefits, alleging that she has been disabled since February 1, 2017. R. 62, 82, 146−47. The application was denied initially and upon reconsideration. R. 85−92. Plaintiff sought a *de novo* hearing before an administrative law

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

judge. R. 93−94. Administrative Law Judge ("ALJ") Kevin Kenneally held a hearing on April 9,

2020, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R.

27−61. In a decision dated June 1, 2020, the ALJ concluded that Plaintiff was not disabled

within the meaning of the Social Security Act from February 1, 2017, Plaintiff's alleged

disability onset date, through the date of that decision. R. 15−23. That decision became the final

decision of the Commissioner of Social Security when the Appeals Council declined review on

December 7, 2020. R. 1−6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF

No. 1. On May 27, 2021, Plaintiff consented to disposition of the matter by a United States

Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil

Procedure. ECF No. 9.[2] On May 28, 2021, the case was reassigned to the undersigned. ECF No.

10. The matter is now ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has

explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's
> factual determinations. And whatever the meaning of substantial in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial evidence, this

---

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

> Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016).  The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));
*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists
only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is
overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or
"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of
Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see
K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into
account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp.
at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular
format in conducting [the] analysis," the decision must contain "sufficient development of the
record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d
501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.
2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an
expression of the evidence s/he considered which supports the result, but also some indication of
the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121
("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication
of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing
*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a
comprehensive explanation for the rejection of evidence; in most cases, a sentence or short
paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent
such articulation, the Court "cannot tell if significant probative evidence was not credited or
simply ignored." *Id.* at 705. As the Third Circuit explains:

4

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff meets the insured status requirements under the Social Security Act through December 31, 2022. R. 18. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between February 1, 2017, her alleged disability onset, and the date of the ALJ's decision. *Id*.

At step two, the ALJ found that Plaintiff's severe impairments consist of status-post L5-S1 laminectomy, cervical spine herniation, and asthma. The ALJ also found that Plaintiff's diagnosed hypothyroidism and hypertension were not severe. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 19.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 19–23. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as an office clerk as that work is generally performed. R. 23. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from February 1, 2017, her alleged disability onset date, through the date of the decision. *Id*.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief,* ECF No. 15; *Plaintiff's Reply Brief*, ECF No. 17. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by

sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 18.

## IV.   DISCUSSION

Plaintiff argues that substantial evidence does not support the ALJ's RFC determination because the ALJ failed to properly evaluate Plaintiff's subjective complaints. *Plaintiff's Brief*, ECF No. 15; *Plaintiff's Reply Brief*, ECF No. 17. Plaintiff's argument is not well taken.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, the administrative law judge is charged with determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform a limited range of light work, as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20

8

CFR 404.1567(b) except the claimant can occasionally push, pull, operate controls with the bilateral upper and lower extremities; can occasionally climb ramps and stairs; can never climb ropes, ladders, or scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; can never be exposed to unprotected heights, moving mechanical parts, or operate a motor vehicle; and is limited to only occasional exposure to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, and extreme heat.

R. 19. In making this determination, the ALJ detailed years of record evidence, including, *inter alia*, that medical records documented a history of back and neck pain that radiates into both legs since a car accident on September 7, 2016; a November 2016 MRI of Plaintiff's lumbar spine showed L5-S1 disc herniation, annular bulging at L2-L3 and L5-S1, posterolisthesis of L5-S1, suspected disc bulging at T11-T12, and stenosis;  a November 2016 MRI of Plaintiff's cervical spine revealed disc herniation at C2-C3, C3-C4, and C4-C5, productive change at C5-C6, and mild to moderate disc space narrowing at the C5-C6 level with mild productive changes; but Plaintiff's January 2017 EMG and nerve conduction study ("NCS") revealed no remarkable evidence of cervical or lumbar radiculopathy; Plaintiff's diagnosis of disc herniation with posterolisthesis and annular tear at the L5-S1 level with symptoms of radiculitis into the left lower extremity and disc herniations at the C2-C3, C3-C4, and C4-C5 levels with annular tear at the C3-C4 and C4-C5, and cord compression at the C3-C4, C4-C5, and C5-C6; findings from an emergency department for asthma in June 2017 that reflected a normal physical and mental status examination, including mild wheezing but otherwise normal respirations, no spinal tenderness, and full range of motion of the extremities with no cyanosis, normal mentation and normal memory; treatment notes in 2017 and 2018 reflecting Plaintiff's complaints of back and neck pain that radiated into her lower extremities and difficulty ambulating despite physical therapy, injections, and medications; examinations during this time that reflected reduced range of motion, positive straight leg raises in the seated position, and diminished Achilles

tendon reflexes bilaterally, but 5/5 strength in the iliopsoas and quadriceps bilaterally; a February 2018 MRI of the lumbar spine that showed worsening of the herniation and progression of L5-S1 stenosis and a discogram that revealed that Plaintiff was positive in L5-S1; that Plaintiff underwent a L5-S1 laminectomy in April 2018; follow-up medical records indicating that, although she had some back discomfort, Plaintiff was doing well, her leg pain had improved, her numbness and tingling had almost completely resolved, and she was taking Percocet very sparingly for pain relief and was participating in physical therapy; findings of limited but improved range of motion with no new or evolving neurological changes; subsequent records indicating that Plaintiff noticed significant relief of her radicular symptoms into the lower extremities and that she had discontinued taking Percocet; a September 2019 consultative examination by Michael Lam, M.D., during which Plaintiff reported receiving injections and taking only over-the-counter ibuprofen for pain control; Dr. Lam's observations that Plaintiff was in no acute distress, was able to get on and off the examining table, was comfortable in a seated position, had a normal gait, did not use an ambulation aide, showed good hand-eye coordination, and was able to heel walk, toe walk, and squat without difficulty; Dr. Lam's findings on examination that, although Plaintiff had limited range of motion of the left shoulder and decreased range of motion of the lumbar spine, she also showed full grip of the upper extremities, full range of motion of the lower extremities, and full range of the motion of the cervical spine; the fact that Plaintiff's mental status examination also showed normal findings; Plaintiff's report that her asthma had been well-controlled with her medication and that she had not experienced any exacerbation of her asthma in "quite some time"; Plaintiff's report that she goes to a store or office by herself, does laundry, does light cleaning, feeds herself, makes simple meals by herself, dresses herself, puts on and takes off her shoes, brushes her teeth, takes a

10

shower or bath, drives, climbs up and down a few steps, and can walk one block; notes from a

February 2020 presentation to the St. Joseph's Regional Medical Center for asthma which

reflected mild expiratory wheezing but otherwise normal findings, including full range of motion

of the neck, normal respiration, full range of motion of the extremities with no injury or

deformity, normal pulses, and steady gait; findings that Plaintiff was lucid, followed commands,

and was oriented to time, place, and time; chest x-rays showing no acute cardiopulmonary

process; Plaintiff's discharge on that same day in stable condition; the opinions of the state

agency reviewing consultants that there were no psychiatric impairments and the state agency

consultant's opinion on reconsideration that Plaintiff could perform light exertional work with

additional postural and environmental limitations, opinions that the ALJ found were generally

consistent and supported by the medical record. R. 20–22. The ALJ went on to explain his RFC

findings as follows:

> In sum, the above residual functional capacity assessment is supported by the
> medical record showing significant limitations in functioning, but only to the
> degree noted in the residual functional capacity above. It is recognized that the
> claimant may experience some degree of pain and discomfort, particularly with
> significant physical exertion, which has been considered in limiting her to light
> work. However, this is not, in itself, incompatible with the performance of some
> work activity. Although the claimant has a history of treatment, the objective
> medical evidence since that time reflects mostly moderate clinical findings,
> generally normal mental status examinations, normal gait, and fairly conservative
> management of the claimant's symptoms. Furthermore, the claimant reported that
> she lives with family, brings her brother meals, shops, manages funds, performs
> self-care, prepares meals, and performs household chores such as sweeping, doing
> laundry, ironing, and vacuuming (4E, 2F). Looking at the allegations of the
> claimant in the light most favorable to her, but in conjunction with the medical
> evidence available, it is found that the claimant retains a residual functional
> capacity at the light exertional level with the additional erosions indicated above.

R. 22. In the view of this Court, this record contains substantial evidence to support the ALJ's

RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186

F.3d at 429.

Plaintiff, however, challenges this RFC determination, arguing that the ALJ failed to properly consider her subjective complaints. *Plaintiff's Brief*, ECF No. 15; *Plaintiff's Reply Brief*, ECF No. 17. This Court disagrees.

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)). Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)). Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id.*; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this evaluation, an ALJ must consider the objective medical evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side

effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms). Finally, an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").[3]

In the present case, the ALJ followed this two-step evaluation process. The ALJ specifically considered Plaintiff's subjective complaints. R. 20. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id*. As previously discussed, the ALJ detailed years of medical evidence to support his findings, and specifically considered Plaintiff's hearing testimony and subjective statements. R. 20–22. In the view of this Court, this record provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements as

---

[3]SSR 16-3p superseded SSR 96-7p on March 26, 2016, and eliminated the use of the term "credibility." SSR 16-3p. However, "while SSR 16-3P clarifies that adjudicators should not make statements about an individual's truthfulness, the overarching task of assessing whether an individual's statements are consistent with other record evidence remains the same." *Levyash v. Colvin*, No. CV 16-2189, 2018 WL 1559769, at *8 (D.N.J. Mar. 30, 2018).

inconsistent with the record evidence. *Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286.

Plaintiff's contrary arguments do not militate a different result. For example, Plaintiff points to objective medical evidence that she believes supports her subjective statements. *Plaintiff's Brief*, ECF No. 15, pp. 17−18. However, as detailed above, the ALJ considered most, if not all of this evidence, but nevertheless concluded that Plaintiff's statements were not entirely consistent with the record as a whole for the reasons previously discussed. R. 20−22. Notably, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."); *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

Plaintiff also contends that the opinion of the consultative examiner, Dr. Lam, supports her subjective statements and that the ALJ erred in finding his opinion unpersuasive. *Plaintiff's Brief*, ECF No. 15, pp. 18−20. Plaintiff's argument is not well taken.

For claims filed after March 27, 2017,[4] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer

---

[4] As previously noted, Plaintiff's claim was filed on May 29, 2019.

or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id.* at § 404.1520c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1).  As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

The applicable regulations further require the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination

15

or decision how persuasive [he] find[s] all of the medical opinions and all of the prior

administrative medical findings in [the claimant's] case record." *Id.* at § 404.1520c(b).

"Specifically, the ALJ must explain how he considered the 'supportability' and 'consistency'

factors for a medical source's opinion. . . . The ALJ may—but is not required to—explain how

he considered the remaining factors." *Michelle K. v. Comm'r of Soc. Sec.*, No. 1:19-CV-01567,

2021 WL 1044262, at *4 (W.D.N.Y. Mar. 19, 2021) (citing 20 C.F.R. §§ 404.1520c(b)(2),

416.920c(b)(2)).

In the present case, the ALJ specifically considered Dr. Lam's opinion, but found it

unpersuasive, reasoning as follows:

> The undersigned finds the opinion of Dr. Lam to be unpersuasive (2F). Dr. Lam
> opined the claimant would not be limited from walking 1 block and standing 10
> minutes with reasonable breaks; she would be able to sit for 15 minutes with needed
> breaks; she does not require an ambulation aide at this time; no significant balance
> limitations were observed during the evaluation; she has difficulty reaching with
> her left arm; she would be able to handle fine and small sized objects; she has no
> significant limitations to fingering such as picking and pinching objects; and she
> can lift 5 to10 pounds in each arm (Id.). The opinion of Dr. Lam is based on a one-
> time examination with the claimant and is inconsistent and unsupported by later
> medical record showing generally unremarkable physical examinations (2F at 5 [R.
> 275], 3F at 20 [R. 300]).

R. 22.

In challenging the ALJ's consideration in this regard, Plaintiff complains that the ALJ

cited to "the CE's own report and the ER visit on February 11, 2020 for influenza and asthma

exacerbation. *Id.*; *see also* Tr. 275 (CE, Dr. Lam's report); Tr. 300 (ER visit). The record

contains no other documentation of any 'later' examination." *Plaintiff's Brief*, ECF No. 15, p. 19.

Plaintiff goes on to complain that the ALJ improperly discounted Dr. Lam's opinion because it

was based on a one-time examination, noting that consultative examinations are "always" based

on a one-time examination and that it is illogical to call a consultative examiner and then reject

16

that opinion. *Id.* at 19−20. Plaintiff also contends that the ALJ improperly rejected Dr. Lam's opinion "*without acknowledging or discussing the findings in the report and the record as a whole that are patently consistent with the opinion.*" *Id.* at 20 (emphasis in the original).

Plaintiff's arguments are not well taken. It is true that the ALJ cited to two pages—a page from Dr. Lam's own report, R. 275, and a page from St. Joseph's University Medical Center when Plaintiff visited the emergency department on February 11, 2020, R. 300—but the ALJ's reliance on these pages does not warrant remand. Although the ALJ erred in characterizing the citation to Dr. Lam's own report, R. 275, as part of the "later medical record[,]" R. 22, the ALJ properly considered Dr. Lam's own findings when determining the persuasiveness of that physician's opinion. 20 C.F.R. § 404.1520(c); *Crossley v. Kijakazi*, No. 3:20-CV-02298, 2021 WL 6197783, at *11 (M.D. Pa. Dec. 31, 2021) (finding physician's opinion was not supported where, *inter alia*, that physician's own treatment notes reflected that the claimant's strength was routinely "normal" and that he had a "normal range of motion"); *Hendricks v. Kijakazi*, , No. 1:20-CV-01045, 2021 WL 5823017, at *7 (M.D. Pa. Dec. 8, 2021) (concluding that the ALJ properly found physician's opinion inconsistent where, *inter alia*, that physician's opinion regarding the claimant's "standing and walking limitations do not correspond to [the physician's] own examination findings"). As detailed above, the ALJ specifically considered that Dr. Lam's musculoskeletal and neurological examination revealed, *inter alia*, a normal gait without an ambulation aide; good hand-eye coordination; ability to heel walk, toe walk, and squat without difficulty; limited range of motion of the left shoulder and decreased range of motion of the lumbar spine, but full grip strength of the upper extremities, full range of motion of the lower extremities,  and full range of the motion of the cervical spine; clear to auscultation of the lungs; and normal mental status examination findings. R. 21, 275; *see also Serrano v. Kijakazi*, No. CV

17

20-3985, 2021 WL 4477137, at *3–4 (E.D. Pa. Sept. 30, 2021) ("In this case, the ALJ discussed

and analyzed the evidence extensively before determining the persuasiveness of the medical

opinions. . . . The ALJ was not required to repeat this information for the sake of elaborating on

her findings of persuasiveness."); *Zajac v. Comm'r of Soc. Sec*., No. 1:20-CV-135, 2021 WL

1169466, at *4 (W.D. Mich. Mar. 29, 2021) (finding that the ALJ properly analyzed an opinion

under §§ 404.1520c(c)(1)−(2) and 416.920c(c)(1)−(2) where the ALJ "articulated proper bases

for finding the opinion unpersuasive, namely, consistently normal physical and mental

examination findings, and she supported her reasons with citations to specific evidence in the

record").

Similarly, the ALJ properly considered Plaintiff's physical examination at the emergency

department at St. Joseph's University Medical Center on February 11, 2020, which, as

previously detailed, revealed, *inter alia*, mild expiratory wheezing but otherwise normal

findings, including full range of motion of the neck, normal respiration, full range of motion of

the extremities with no injury or deformity, normal pulses, and steady gait; she was lucid,

followed commands, and was oriented to time and place; her chest x-rays showed no acute

cardiopulmonary process and she was discharged on the same day in stable condition. R. 21−22,

300; *see also* 20 C.F.R. § 404.1520c(c)(1)−(2); *Serrano*, 2021 WL 4477137, at *3–4; *Zajac*,

2021 WL 1169466, at *4. To the extent that Plaintiff insists that the ALJ failed to

"*acknowledge[e] or discuss[] the findings in the report and the record as a whole that are*

*patently consistent with the opinion*[,]" *Plaintiff's Brief*, ECF No. 15, p. 20 (emphasis in the

original), Plaintiff never identifies any such findings that support Plaintiff's subjective statements

or a conclusion of disability. *See id.* The Court will not hunt through the record to find evidence

or construct Plaintiff's arguments for her. *See Atkins v. Comm'r Soc. Sec.*, 810 F. App'x 122, 129

(3d Cir. 2020); *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("[T]his Court has frequently instructed parties that they bear the responsibility to comb the record and point the Court to the facts that support their arguments."). In any event, even if the Court considered as supportive of Plaintiff's argument the objective evidence identified earlier in *Plaintiff's Brief*, ECF No. 15, pp. 17–18, as previously explained, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson*, 497 F. App'x at 201; *Chandler*, 667 F.3d at 359; *Hatton*, 131 F. App'x at 880.

Plaintiff next complains that the ALJ relied on a "highly selective" description of her daily activities when discounting her subjective complaints and insists that her actual activities do not demonstrate an ability to perform work activity on a sustained basis. *Plaintiff's Brief*, ECF No. 15, pp. 21–22; *Plaintiff's Reply Brief*, ECF No. 17, pp. 3–4. However, Plaintiff's activities of daily living were but one relevant factor that the ALJ considered in making his RFC determination and in assessing Plaintiff's subjective complaints. R. 20–22; *see also* 20 C.F.R. § 404.1529(c)(3)(i) (providing that the ALJ may consider a claimant's daily activities); *Cunningham v. Comm'r of Soc. Sec.*, 507 F. App'x 111, 118 (3d Cir. 2012) ("[I]t is appropriate for an ALJ to consider the number and type of activities in which a claimant engages when assessing his or her residual functional capacity. . . and was permitted to consider them to evaluate the credibility of [the claimant's] subjective complaints of pain and other symptoms.") (citations omitted). In any event, to the extent that Plaintiff points to evidence that she believes undermines the ALJ's consideration, as long as the ALJ satisfies the substantial evidence standard, the Court will uphold the ALJ's decision even if contrary evidence exists that justifies

the opposite conclusion. *Johnson*, 497 F. App'x at 201; *Chandler*, 667 F.3d at 359; *Hatton*, 131 F. App'x at 880.

Plaintiff also contends that the ALJ did not properly consider the location, duration, frequency, and intensity of her pain, and argues that, to the extent that the ALJ acknowledges her subjective complaints of pain, such "concession that her pain persisted despite a range of treatment is not reasonably or logically connected to his finding that her description of persistent pain is not consistent with the record[.]" *Plaintiff's Brief*, ECF No. 15, pp. 22−24. This Court disagrees. As detailed above, the ALJ carefully considered the medical record in this case, noting, *inter alia*, that Plaintiff's symptoms improved after her surgery in 2018. R. 21−22. The ALJ went on to specifically recognize that Plaintiff "may experience some degree of pain and discomfort, particularly with significant physical exertion, which has been considered in limiting her to light work. However, this is not, in itself, incompatible with the performance of some work activity." R. 22. The Court finds no error with the ALJ's reasoning in this regard. *See Jennifer L. v. Comm'r of Soc. Sec.,* No. CV 20-8537, 2022 WL 494110, at *3 (D.N.J. Feb. 17, 2022) (noting that the claimant's pain resulting from rheumatoid arthritis "is not enough to support a finding that Plaintiff is disabled") (citations omitted); *Longboat v. Berryhill*, No. CV 17-146-E, 2018 WL 4157067, at *1 (W.D. Pa. Aug. 30, 2018) (finding, *inter alia*, that the "ALJ did not entirely discount Plaintiff's allegations of pain in his decision; rather, he appropriately found that Plaintiff indeed suffered from moderate pain, but still retained the capacity for light work with additional restrictions"); *Morel v. Colvin*, No. 14-2934, 2016 WL 1270758, at *6 (D.N.J. Apr. 1, 2016) ("The claimant need not be pain-free to be found 'not disabled.'").

Plaintiff goes on to argue that she "attempted numerous treatment modalities, including physical therapy, chiropractic care, various injections, pain medication, and ultimately, surgery"

to alleviate her pain, which reflects that her symptoms were intense and persistent. *Plaintiff's Brief*, ECF No. 15, pp. 24−25 (citing, *inter alia*, SSR 16-3p). Plaintiff's argument is not well taken. As is evident from the summary detailed above, the ALJ specifically considered Plaintiff's treatment history, including the fact that, although she continued to experience some discomfort, her pain improved, her numbness and tingling almost completely resolved, and she ultimately discontinued taking Percocet after her surgery in April 2018. R. 21. Notably, as the Acting Commissioner notes, *Defendant's Brief Pursuant to Local Rule 9.1*, ECF No. 16, pp. 11−12, Plaintiff cites to treatment that pre-dated this surgery. *Plaintiff's Brief*, ECF No. 15, pp. 24−25. Plaintiff has not persuaded this Court that the ALJ erred in his consideration of her treatment history.

Finally, Plaintiff contends that the ALJ erred when failing to consider "her exemplary, uninterrupted 37-year work history" when assessing her subjective complaints. *Plaintiff's Brief*, ECF No. 15, pp. 25−28; *see also Plaintiff's Reply Brief*, ECF No. 17, pp. 4−6. The Court is not persuaded that this issue requires remand. The United States Court of Appeals for the Third Circuit has upheld an ALJ's evaluation of a claimant's subjective complaints where the ALJ did not "explicitly discuss his years of uninterrupted employment[,]" but where the ALJ did explain why other evidence in the record belied the claimant's subjective complaints. *Sanborn v. Comm'r of Soc. Sec.*, 613 F. App'x 171, 177 (3d Cir. 2015); *see also Forcinito v. Comm'r of Soc. Sec.*, No. CIV. 12-6940, 2014 WL 252095, at *9 (D.N.J. Jan. 23, 2014) ("[W]ork history is only one of many factors the ALJ may consider in assessing claimant's credibility. . . . Work history is not dispositive of credibility and the question of credibility is left to the ALJ's discretion after considering all of the relevant factors.") (citations omitted). Here, as noted above, the ALJ detailed why other record evidence undermined Plaintiff's subjective complaints. R. 20−22.

21

Moreover, even though the ALJ did not expressly discuss Plaintiff's work history when assessing her subjective statements, the ALJ specifically referred to her work history when concluding that Plaintiff was capable of performing her past relevant work as an office clerk. R. 23 (citing, *inter alia*, Exhibit 3E, R. 165 − 73, which reflects, *inter alia*, that Plaintiff worked as a "Sr. clerk / receptionist" from July 21, 1979, to February 1, 2017, R. 166). *See Burrell v. Kijakazi*, No. CV 21-3662, 2022 WL 742841, at *4 (E.D. Pa. Mar. 10, 2022) (finding that although "the ALJ did not mention Plaintiff's work history in her credibility assessment, she explicitly referenced Plaintiff's work history in her factual findings and when determining if jobs existed in the national economy that Plaintiff could perform" and that "even if the ALJ failed to consider Plaintiff's work history, such failure does not constitute reversible error because the ALJ articulated how she reached her decision based on the evidence in the record"); *Forcinito v. Comm'r of Soc. Sec.*, No. CIV. 12-6940 JBS, 2014 WL 252095, at *9 (D.N.J. Jan. 23, 2014) (rejecting the plaintiff's argument that the ALJ failed to consider her work history where "the ALJ did consider Plaintiff's work history by acknowledging her past relevant work as a cook" and that "work history is only one of many factors the ALJ may consider in assessing claimant's credibility" but that "[w]ork history is not dispositive of credibility and the question of credibility is left to the ALJ's discretion after considering all of the relevant factors"). Accordingly, the Court finds that the ALJ sufficiently explained his reasoning in evaluating Plaintiff's subjective complaints. The ALJ's findings in this regard are supported by substantial evidence in the record and are therefore entitled to this Court's deference. *See id*.; *see also* R. 20−23; SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871,

873 (3d Cir. 1983)); *Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (finding

that the ALJ sufficiently evaluated the plaintiff's testimony where "the ALJ devoted two pages to

a discussion of claimant's subjective complaints and cited Claimant's daily activities and

objective medical reports"). Accordingly, the ALJ's assessment of Plaintiff's subjective

complaints will not serve as a basis for remand of this action. *Id.*

In short, for all these reasons, the Court concludes that the ALJ's findings regarding

Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the

record, as does his consideration of Plaintiff's subjective complaints and the opinion of Dr. Lam.

## V.   CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42

U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  May 9, 2022                                      *s/Norah McCann King*
                                                        NORAH McCANN KING
                                                        UNITED STATES MAGISTRATE JUDGE